STRAUB, Circuit Judge:
 

 Jerasimos Papapanayotou, attorney
 
 pro se,
 
 appeals from an order of the United States District Court for the Southern District of New York (Charles L. Brieant, Judge) imposing sanctions on him pursuant to 28 U.S.C. § 1927, for maintaining in bad faith an appeal of the Bankruptcy Court’s decision in his representation of 60 East 80th Street Equities, Inc., the debtor
 
 (“Debtor”)
 

 [1]
 

 .
 
 In addition, Jeffrey Sapir,
 
 *112
 
 the trustee of the Debtor’s estate (“Trustee”), moves for sanctions from this Court under Fed. R.App. P. 38. Because we agree with the District Court that Papapa-nayotou’s actions in the proceedings below evidence clear bad faith and an unreasonable pursuit of frivolous claims, we affirm the order of the District Court imposing the sanctions. We also grant the Trustee’s motion for sanctions in this Court, based on Papapanayotou’s similar conduct on appeal of the sanctions. Finally, we deny Papapanayotou’s cross-motion for sanctions against the Trustee.
 

 BACKGROUND
 

 In order to evaluate properly the appeal of the sanctions imposed upon Papapanay-otou, it is necessary to describe, in some detail, the factual circumstances surrounding Papapanayotou’s representation of the Debtor in the underlying action in the Bankruptcy Court and in the District Court.
 

 A.
 
 Events in the Bankruptcy Court
 

 Angelo Slabakis is the sole shareholder of the Debtor. On April 25, 1996, the Debtor’s former attorney, and purported creditor of the Debtor, filed an involuntary petition against the Debtor under Title 11, Chapter 7 of the United States Bankruptcy Code. The involuntary bankruptcy filing occurred one day prior to a scheduled foreclosure sale, thereby frustrating the sale of the Debtor’s sole asset: property at 60 East 80th Street, New York, New York (“Property”). By virtue of the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a), the foreclosure sale was automatically stayed. Pursuant to an order of the Bankruptcy Court, the automatic stay was vacated to allow mortgagee Dorlexa Company to foreclose on the Property. Dorlexa completed its foreclosure and ultimately obtained a $1,189,968.73 deficiency judgment against Slabakis on June 11, 1999, plus interest and costs from May 1997.
 

 Pursuant to another order of the Bankruptcy Court, Jeffery Sapir was appointed trustee of the Debtor’s estate. The Trustee commenced an adversary proceeding against Slabakis and various tenants in possession of apartments at the Property, including Slabakis’s friends Courtney Red-ding, Doug Bronsky, Eddie Gupta, and Juan Zapata (collectively “Judgment Debtors”). The essential allegations were that Slabakis directed a scheme by which the Debtor granted below-market leases to the other Judgment Debtors, on the eve of a foreclosure action on the Property, in order to destroy the value of the Property and force the mortgagee to sell the mortgage to Slabakis at a steep discount. The Judgment Debtors defaulted either by failing to file an answer or failing to appear for trial. Default judgments were entered on April 4, 1997 and April 25, 1999 (“Judgments”). The Judgment Debtors, through attorney Papapanayotou, sought to vacate the Judgments. The Bankruptcy Court denied those applications after a hearing, and referred Slabakis’s and Redding’s allegedly perjurious testimony in connection with the hearing to the U.S. Attorney’s Office.
 

 The Trustee unsuccessfully attempted to recover assets from the Judgment Debtors. As part of his efforts to locate such assets, the Trustee commissioned an asset search that revealed that none of the Judgment Debtors had any real or personal property and that Slabakis had unsatisfied judgments recorded against him that collectively exceeded $27,000,000. Concluding that recovery against the Judgment Debtors was unlikely, the Trustee then petitioned the Bankruptcy Court to sell the Judgments. The Judgments were eventually sold to Dorlexa for $15,000, together with a release by Dorlexa of its $1.2 million deficiency claims against the Debt-
 
 *113
 
 or’s estate, in order to recover assets for the estate.
 
 See
 
 11 U.S.C. §§ 363(b)
 
 &
 
 (f).
 
 [2]
 

 The Debtor, again through attorney Pa-papanayotou, then sought to vacate the sale of the Judgments in Bankruptcy Court, contending that it was entitled to and did not receive notice of the sale and that the sale constituted a violation of the Trustee’s fiduciary duty. The Bankruptcy Court dismissed the Debtor’s motion to vacate the sale, and held that, under the applicable case law, the Debtor had no standing to object to the sale. In fact, it “had no more entitlement to notice [of the sale] than any other corporate entity in the world or any passerby in the street,”
 
 In re 60 East 80th Street Equities, Inc.,
 
 No. 96 B 20772 (Bankr.S.D.N.Y. Feb. 23, 1999) (“Bankr.Decis.”) at 6, and the sale “constituted a valid and good faith exercise of business judgment and benefited the estate more than any other potential disposition of the Judgments,”
 
 id.
 
 at 7. In its decision, the Bankruptcy Court concluded that the Debtor’s purported basis for vacating the sale was without “support in logic or the law,”
 
 id.
 
 at 4, and further characterized the Debtor’s theory as “absurd[],”
 
 id.
 
 at 6, “frivolous,”
 
 id.,
 
 “implausible],”
 
 id.
 
 at 7, and “inconceivable,”
 
 id.
 

 B.
 
 Appeal to the District Court and Imposition of Sanctions
 

 On May 4, 1999, the Debtor, still represented by Papapanayotou, appealed the Bankruptcy Court’s April 26, 1999 order denying the Debtor’s motion to vacate the sale. In his opening brief to the District Court, Papapanayotou disparaged and made unsubstantiated allegations that the Bankruptcy Court and the Trustee were engaged in civil and criminal misconduct. In particular, Papapanayotou accused the Bankruptcy Court of collusion with the Trustee and alleged that the Trustee had the “helping hand of an approvingly winking Bankruptcy Court,” Trustee’s Counter Appendix on Appeal (“App.”), at 477; that the Bankruptcy Court conducted itself in a manner of “impermissible advocacy of a litigant’s cause by a Court of Law,” App. at 479; that the Bankruptcy Court applied “double standards,” App. at 486; that its decision was “utterly absurd,”
 
 id.,
 
 and “transcends the bounds of an ordinary error, as evincing [ ] fundamental ignorance,” App. at 488; and that the sale at issue was a “judicially sanctioned grand larceny,” App. at 489 (emphasis omitted). He also accused the Trustee of “fraud, deceit and misrepresentation,” App. at 477. In his reply brief to the District Court, he wrote, among other things, that the Trustee and Dorlexa engaged in a judicially sanctioned fraud, App. at 627; that “as a matter of record, the cynicism and arrogance of the crooks staffing [Dorlexa’s] management ranks has no bounds,” App. at 630; that the Trustee committed “defalcation and malfeasance,” App. at 636; that the Trustee is an “idiot,” who “pocketed” the purchase price of the Judgments, App. at 637; and that the Trustee and Dorlexa are “thieves and liars acting in concert with thieves and liars under the approving nod of a sympathetic court,”
 
 id.
 

 The District Court affirmed the Bankruptcy Court’s decision, and dismissed the Debtor’s appeal as frivolous. In addition, the District Court,
 
 sua sponte,
 
 awarded sanctions against Papapanayotou pursuant to 28 U.S.C. § 1927 for “maintaining] this appeal in bad faith for the purpose of multiplying the proceedings in the case unreasonably and vexatiously,” and for making “spurious allegations of criminality in his brief against the Bankruptcy Judge and the Trustee.”
 
 60 East 80th Street Equities, Inc. v. Sapir,
 
 No. 99 Civ. 4388 (S.D.N.Y. July 30, 1999). Before imposing the sanctions, the court asked Papapanay-otou “[W]hy this Court should not con-
 
 *114
 
 elude that your activities here in bringing this appeal and in making these allegations of dishonesty and idiocy which you’ve made in your papers submitted here should not come within a finding that you have unreasonably and vexatiously multiplied the proceedings of the case within the standard of Section 1927 of Title 28, United States Code.” App. at 655. And, again, the court asked, “[E]xplain to me why you shouldn’t be required to answer for the excessive costs, expenses and attorneys’ fees reasonably incurred because of such conduct, because I think that’s what you did.”
 
 Id.
 
 The District Court also questioned Papapanayotou specifically about some of the aforementioned statements he had made about the Trustee and the Bankruptcy Court in his briefs, and expressed disbelief and outrage that a member of the bar would make such statements.
 

 Papapanayotou’s response to the District Court was to state that his actions were “within the bounds of permissible adversarial advocacy,” App. at 642, and that his appeal was “not only meritorious, but, in fact, indefensible [sic],” App. at 657. He spoke at length of his view of the merits of the case, making conclusory statements that the Trustee had not attempted to collect the Judgments; that Papapanayotou had acted in “good faith”; that he did not “run [up] any bill for the estate”; that “the authority cited in [his] brief speaks for itself’; and that whatever he did “had the solid premise both in fact and at law.” App. at 658. When the District Court asked Papapanayotou to explain how any of his arguments “make the Trustee an idiot,” he had no response.
 
 See, e.g.,
 
 App. at 656. Papapanayotou also apologized for “the inconvenience” that he had caused the court. App. at 658. The court stated, “This isn’t a case of inconvenience to me, it’s a disgrace to you and the profession.”
 
 Id.
 
 At no time did Papapa-nayotou ask for additional time to respond to the District Court’s inquiries. In fact, at the end of his colloquy, Papapanayotou declared, “I have concluded your Honor, in response to your invitation to explain my actions.”
 
 Id.
 

 After this exchange, the District Court concluded that “within the meaning of Title 28, United States Code, Section 1927, the attorney of record on this appeal multiplied the proceedings of this case unreasonably and vexatiously and ... he should be required to [pay the] excess costs and expenses,” and that “[t]he reasons and excuses given for what was done and for the way in which it was done and for the harsh invective employed in doing so are inadequate in this Court’s judgment.” App. at 660-61. A judgment dated July 30, 1999 was entered dismissing the appeal as frivolous and sanctioning Papapanayotou $5,000 pursuant to § 1927. The District Court chose $5,000 as the amount of the sanction because it was half of what the Trustee estimated as the cost of responding to the appeal from the Bankruptcy Court’s decision. As of the date of the filing of this opinion, that sanction had not yet been paid.
 

 C.
 
 Appeal to this Court
 

 The Debtor, again through Papapanayo-tou, appealed the District Court’s judgment dated July 30, 1999, which affirmed the Bankruptcy Court and imposed sanctions. The Notice of Appeal also contained Papapanayotou’s notice that he appealed from the judgment insofar as it required him to pay $5,000 in sanctions. By a Stipulation and Order of Withdrawal signed by Papapanayotou dated December 21, 1999, the Debtor withdrew its appeal of the decision affirming the Bankruptcy Court. Papapanayotou’s appeal of the sanctions imposed on him remains, as well as the Trustee’s motion for sanctions against Papapanayotou from this Court, and Papapanayotou’s cross-motion for sanctions from this Court against the Trustee.
 

 In his brief to this Court appealing the imposition of sanctions, Papapanayotou now contends: (1) that the District Court
 
 *115
 
 also engaged in “a judicial fraud designed to whitewash the actions of the Trustee and the Bankruptcy Court”; (2) that the “District Court did not commit inadvertent error but simply perpetrated a judicial fraud on the Appellants in a disgraceful violation of its constitutional oath and its pledge to uphold the laws of the United States and act as an impartial arbiter in the adjudication of any controversy before it”; (3) that the District Court “couldn’t care less” about the Trustee’s “theft of estate assets”; (4) that the District Court turned a blind eye to the purported theft because “first things first[,] nobody can insult a friendly acquaintance: never mind the latter’s collusive theft of estate assets”; (5) that the “findings of fact and conclusions of law of the District Court are
 
 pure inventions”
 
 and “fabrication^]”; (6) that the District Court engaged in a “conscious falsehood”; (7) that the imposition of sanctions was an
 
 “ad temrem
 
 tactic designed to exact retribution for the denouncement of the
 
 proteges
 
 of the District Court” (emphasis in original); and (8) that Judge Brieant is a “disgrace” to the judiciary because he “perpetrat[ed] a judicial fraud on a litigant by inventing grounds to deny its appeal, testifie[d] as an unsworn witness and abuse[d] counsel for living up to his ethical obligations to his client.”
 

 In addition to adding the District Court to the vast conspiracy against him, Papa-panayotou continues to maintain his malicious and slanderous attack on the Bankruptcy Court and the Trustee, repeating many of the same groundless accusations he made in the District Court,
 
 i.e.,
 
 accusations that the Trustee engaged in “fraud[ ],” and the “theft of estate assets,” and that the Bankruptcy Court’s “nodding approval” of such conduct “smacks of impropriety, collusion and fraud.”
 

 DISCUSSION
 

 A.
 
 Appeal From Sanctions in the District Court
 

 Title 28, section 1927 of the United States Code provides that a court may impose sanctions on an attorney who “so multiplies the proceedings in any case unreasonably and vexatiously.” 28 U.S.C. § 1927. Sanctions may be imposed, however, “only when there is a finding of conduct constituting or akin to bad faith.”
 
 Sakon v. Andreo,
 
 119 F.3d 109, 114 (2d Cir.1997). “We have held that an award under § 1927 is proper when the attorney’s actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.”
 
 United States v. International Bhd. of Teamsters,
 
 948 F.2d 1338, 1345 (2d Cir.1991) (internal quotation marks omitted);
 
 see Keller v. Mobil Corp.,
 
 55 F.3d 94, 99 (2d Cir.1995). We review the District Court’s decision to impose sanctions for abuse of discretion.
 
 See Ted Lapidus, S.A. v. Vann,
 
 112 F.3d 91, 96 (2d Cir.),
 
 cert. denied,
 
 522 U.S. 932, 118 S.Ct. 337, 139 L.Ed.2d 262 (1997).
 

 1.
 
 Lack of Merit and Bad Faith
 

 As both the Bankruptcy Court and the District Court concluded repeatedly, the Debtor’s challenge to the sale of the assets, pursued through attorney Papapanayotou in Bankruptcy Court and in District Court, was completely without merit.
 

 First, the Debtor clearly lacked standing to challenge the sale. It is well-established that a Chapter 7 debtor is a “party in interest” and has standing to object to a sale of the assets, or otherwise participate in litigation surrounding the assets of the estate, only if there could be a surplus after all creditors’ claims are paid.
 
 See, e.g.,
 
 L. King, Collier on Bankruptcy § 721.02[2] (15th ed. rev.1996) (explaining that a Chapter 7 Trustee has a duty to provide notice to
 
 creditors
 
 of the Trustee’s intention to use, sell, or lease property outside the normal course of the debtor’s prepetition business);
 
 id.
 
 at § 502.02[2][c] (stating that a debtor is a party in interest and has standing to object to a claim where there could be a surplus after all claims are paid);
 
 In re Vebeliunas,
 
 231
 
 *116
 
 B.R. 181, 189-90 (Bankr.S.D.N.Y.1999) (explaining that a debtor retains an equity security interest in the estate of the property only when the debtor can demonstrate that there would be a surplus for his estate),
 
 appeal dismissed,
 
 246 B.R. 172 (S.D.N.Y.2000);
 
 In re Roussopoulos,
 
 198 B.R. 33, 44 n. 9 (Bankr.E.D.N.Y.1996) (noting that “an insolvent Chapter 7 debt- or lacks standing to challenge a proposed sale of estate property because he lacks a pecuniary interest in such property”);
 
 cf. In re Gucci
 
 126 F.3d 380, 388 (2d Cir.1997) (“To have standing to appeal from a bankruptcy court ruling in this Circuit, an appellant must be an ‘aggrieved person,’ a person ‘directly and adversely affected pe-cuniarily’ by the challenged order of the bankruptcy court.” (quoting
 
 Kabro Assocs. v. Colony Hill Assocs.,
 
 111 F.3d 269, 273 (2d Cir.1997))). Both the Bankruptcy Court and the District Court in this case found that there was “no evidence that a surplus is a reasonable possibility in these proceedings,” App. at 653, nor that the Debtor had any equitable interest whatsoever in the Judgments since the sole owner’s fraudulent conduct undermined the value of the Debtor’s sole asset and gave rise to the Judgments in the first place. These findings of fact are not clearly erroneous,
 
 cf.
 
 Bankr.R. 8013 (“[The Bankruptcy Court’s] [fjindings of fact shall not be set aside unless clearly erroneous .... ”), and, accordingly, we find that the Debtor lacked standing.
 

 Second, the Trustee’s sale of the Judgments to Dorlexa was, as the Bankruptcy Court concluded, “a valid and good faith exercise of business judgment [that] bene-fitted the [Debtor’s] estate more than any other potential disposition of the Judgments.” Bankr.Decis. at 7. Both courts noted that the Debtor’s argument that the sale to Dorlexa was a breach of the Trustee’s duty was frivolous in light of the fact that it was “inconceivable that anybody would or could outbid Dorlexa for the Judgments,” Bankr.Decis. at 7. These findings, together with the controlling legal authority, clearly support the lower courts’ conclusions that the challenge to the sale of assets, and the appeal from the denial of that challenge, was without basis in law or fact.
 

 Furthermore, it was not an abuse of the District Court’s discretion to conclude that the appeal of the Bankruptcy Court’s decision was pursued in bad faith. First, as stated above, bad faith may be inferred where the action is completely without merit.
 
 See International Bhd. of Teamsters,
 
 948 F.2d at 1345. Here, not only were the claims meritless, but Papapanayotou was warned of their frivolity by the Bankruptcy Court before he filed the appeal to the District Court.
 
 See
 
 Bankr.Decis. at 4-6 (bankruptcy court’s labeling of the claims as without “support in logic or the law,” “absurd,” “frivolous,” “implausible],” and “inconceivable”);
 
 see also Fox v. Boucher,
 
 794 F.2d 34, 37-38 (2d Cir.1986) (affirming a district court’s imposition of sanctions under Rule 11 after the attorney filed a motion to vacate the judgment under Fed.R.Civ.P. 60(b) “in the face of a written decision by the district judge that concluded plaintiffs action was frivolous and brought in bad faith”). In addition, the claim asserted in the District Court — that the Trustee had not even attempted to collect from the Judgment Debtors before selling the estate — is particularly frivolous in the face of the more than $27,000,000 in unsatisfied judgments of record against Slabakis, of which Papapanayotou must have been aware.
 

 Papapanayotou’s bad faith and vexa-tiousness are most evident, however, in the nature of his arguments to the District Court, in which he disparaged and made unsubstantiated allegations impugning the integrity of the Bankruptcy Court Judge and the Trustee — claims which had absolutely nothing to do with the merits of his case. Though the full extent of his slanderous vitriol has been recounted above, some of the more outrageous comments bear repeating. He accused a federal judge and a fellow member of the bar of
 
 *117
 
 engaging in civil and criminal misconduct, stating in his papers, for example, that the Trustee had the “helping hand of an approvingly winking Bankruptcy Court,” App. at 477; that the court applied “double standards,” App. at 486; that the sale at issue was a “judicially sanctioned grand larceny,” App. at 489; and that the Trustee and Dorlexa engaged in a judicially sanctioned fraud. He called the Trustee an “idiot,” App. at 641-42, and accused the Bankruptcy Judge of “fundamental ignorance,” App. at 488. Such comments cross the line from passionate advocacy and disagreement with a court’s decision into sanctionable conduct evincing bad faith.
 
 Cf.
 
 Tony Mauro,
 
 Pondering the Right to Practice Law,
 
 N.Y.L.J., June 26, 2000 at 2 (discussing the Supreme Court’s disbarment of an attorney who filed petitions for writ of certiorari “with invective against the U.S. Court of Appeals for the Second Circuit,” including personal attacks against its Chief Judge and statements that the Court could be declared a corrupt enterprise under RICO).
 

 Thus, bad faith here may be inferred from the clear lack of merit of the claims, a fact of which Papapanayotou was well aware before he filed the appeal, and the numerous attempts to impugn the integrity of a federal judge and fellow attorney through totally unsubstantiated abusive and slanderous statements.
 
 Cf. Eisemann v. Greene,
 
 204 F.3d 393, 397 (2d Cir.2000) (per curiam) (noting that bad faith may be inferred from the meritlessness of a motion).
 

 2.
 
 Due Process
 

 “‘[D]ue process requires that courts provide notice and opportunity to be heard before imposing
 
 any
 
 kind of sanctions.’ ”
 
 Ted Lapidus, S.A.,
 
 112 F.3d at 96 (quoting
 
 In re Ames Dep’t Stores, Inc.,
 
 76 F.3d 66, 70 (2d Cir.1996)). More specifically, we have held that “[a]n attorney whom the court proposes to sanction must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter, and must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges.”
 
 Sakon,
 
 119 F.3d at 114 (internal quotation marks omitted). At a minimum, the notice requirement mandates that the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense.
 
 See id.
 
 at 114;
 
 Ted Lapidus, S.A.,
 
 112 F.3d at 96. The opportunity to respond is judged under a reasonableness standard: a full evidentiary hearing is not required; the opportunity to respond by brief or oral argument may suffice.
 
 See, e.g., Klein v. Ulster Sav. Bank,
 
 127 F.3d 292, 295 (2d Cir.1997) (per curiam) (collecting cases supporting this proposition but remanding to the district court to give attorney a chance to be heard on imposition of sanctions because none had been given).
 

 As an initial matter, it is far from clear that Papapanayotou has not waived his right to challenge the District Court’s imposition of sanctions as a violation of due process. He first raises the issue in a single sentence in his reply brief on appeal. Arguably, the argument has therefore been waived.
 
 See Thomas v. Roach,
 
 165 F.3d 137, 146 (2d Cir.1999). Even assuming Papapanayotou has not waived his due process challenge, we find no violation of his due process rights in any event.
 

 There is no question Papapanayotou received adequate notice of both the conduct for which the court was considering the imposition of sanctions and the authority under which that conduct was to be judged. For example, the court asked Pa-papanayotou, “why [it] should not conclude that [his] activities here in bringing this appeal and in making these allegations of dishonesty and idiocy which [he] made in [his] papers submitted here should not
 
 *118
 
 come within a finding that [he has] unreasonably and vexatiously multiplied the proceedings of the case within the standard of Section 1927 of Title 28, United States Code.” App. at 655.
 
 Cf. Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.,
 
 174 F.3d 87, 92 (2d Cir.1999) (per curiam) (vacating a district court’s imposition of sanctions where written order providing notice listed possible legal bases for sanctions but failed to apprise the attorney of the particular conduct for which the court was considering imposing sanctions).
 

 Moreover, while ordinarily it is preferable for a court to provide an attorney with advance, written notice of the possibility of sanctions — a benefit not accorded to Papapanayotou here — we have not previously made such notice a requirement. In fact, in one instance we affirmed, without discussion, the imposition of sanctions under § 1927, where the court imposed the sanctions during trial after only several warnings from the bench that the continued playing of a videotape that had no evidentiary value would result in such sanctions.
 
 See New York v. Operation Rescue Nat’l,
 
 80 F.3d 64, 72-73 (2d Cir.),
 
 cert. denied,
 
 519 U.S. 825, 117 S.Ct. 85, 136 L.Ed.2d 42 (1996). Under the circumstances of this case, we conclude that the notice given in the District Court was reasonable and adequate.
 
 [3]
 

 With respect to Papapanayotou’s opportunity to be heard, the District Court gave Papapanayotou repeated opportunities to explain his conduct once the issue of sanctions was raised in the courtroom. Not only did Papapanayotou not request any extension of time, or permission to file any written materials, but the substance of his argument was such that additional time would not have aided his cause. For example, in response to the District Court’s inquiries, Papapanayotou simply contended, implausibly, that his personal attacks on the Bankruptcy Court and his adversary were “within the bounds of permissible adversarial advocacy,” App. at 642, and did not appear to comprehend that, whatever the merits of his case, they did not justify his personal attacks. In fact, he termed his behavior only an “inconvenience” to the Court, App. at 658, and continued to claim that his appeal, which had been deemed frivolous by two federal judges, was meritorious. Finally, after offering his entirely unsatisfactory explanation for his conduct, Papapanayotou explicitly told the District Court that he “ha[d] concluded ... in response to [the Court’s] invitation to explain [his] actions.” App. at 658. In short, it was entirely reasonable that the District Court sanctioned Papapa-nayotou after hearing Papapanayotou’s response to its oral order to show cause.
 

 B.
 
 Motion For Sanctions Before This Court
 

 The Trustee has filed a separate motion requesting sanctions from this Court under Federal Rule of Appellate Procedure 38.
 
 [4]
 
 Rule 38 provides, “If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee.” Fed. R.App. P. 38. “Rule 38
 
 *119
 
 sanctions may include the granting of reasonable attorneys’ fees to the party forced to defend the frivolous appeal.”
 
 Rodriguez Alvarez v. Bahama Cruise Line, Inc.,
 
 898 F.2d 312, 318 (2d Cir.1990) (awarding opposing counsel attorneys’ fees and costs on appeal based on lack of merit in appeal, intransigence in responding to plaintiffs claims, and conclusion that “appeal was launched solely for harassment value”).
 

 The applicable standard for imposition of Rule 38 sanctions in this Circuit is slightly unclear. In several instances we have stated that Rule 38, like § 1927, requires a showing that the appeal is frivolous as well as “a clear showing of bad faith.”
 
 In re Hartford Textile Corp.,
 
 659 F.2d 299, 305 (2d Cir.1981) (per curiam),
 
 cert. denied,
 
 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982);
 
 see also Hirschfeld v. Spanakos,
 
 104 F.3d 16, 20 (2d Cir.1997) (“The standard for sanctioning a party for bringing an appeal or motion is whether the sanctioned party acted in bad faith, vexatiously, wantonly, etc.”);
 
 Schiff v. United States,
 
 919 F.2d 830, 834 (2d Cir.1990) (per curiam) (concluding that the situation before the Court “is one of those highly unusual instances which permit the imposition of sanctions under Rule 38 because of a clear showing of bad faith”) (internal quotation marks omitted),
 
 cert. denied,
 
 501 U.S. 1238, 111 S.Ct. 2871, 115 L.Ed.2d 1037 (1991). We have at other times also stated that a showing of bad faith is not required for an imposition of sanctions under Rule 38.
 
 See In re Drexel Burnham Lambert Group, Inc.,
 
 995 F.2d 1138, 1147 (2d Cir.1993) (“The standard for the imposition of [sanctions under Rule 38] is where the appeal taken is found to be groundless, without foundation, and without merit, even though appellant did not bring it in bad faith.”);
 
 S.R. Mercantile Corp. v. Maloney,
 
 909 F.2d 79, 82-83 (2d Cir.1990) (regarding the Tenth Circuit’s articulation in
 
 Braley v. Campbell,
 
 832 F.2d 1504, 1512 (10th Cir.1987), as “defining the standard for imposition of sanctions on an attorney under Rule 38,” which requires only “reckless disregard of the attorney’s duties to the court”). In addition, the Sixth Circuit has recently noted that a split exists among the circuits as to whether “bad faith” or “intentional misconduct” is a requirement for Rule 38 sanctions, although it noted that the majority of circuits have not imposed such a requirement.
 
 See Wilton Corp. v. Ashland Castings Corp.,
 
 188 F.3d 670, 676-77 (6th Cir.1999) (collecting cases and deciding that the Sixth Circuit does not require a showing of bad faith). We do not find it necessary to choose between these standards in deciding whether to impose sanctions under Rule 38, because Papapanayo-tou’s conduct on appeal rises even to the level of bad faith.
 

 Because the Debtor has withdrawn the underlying appeal challenging the Trustee’s sale of the estate assets, the only issue remaining before this Court is the propriety of the District Court’s imposition of sanctions upon Papapanayotou pursuant to § 1927. Thus, our decision to impose sanctions upon Papapanayotou in this Court pursuant to Rule 38 turns solely on whether his appeal of the District Court’s imposition of sanctions upon him has been conducted in a frivolous manner and in bad faith.
 

 First, we conclude that Papapanayotou’s persistence in appealing the District Court’s sanctions, together with the nature of his arguments, is clearly frivolous. As described above, it is clear that the District Court properly found that Papapa-nayotou acted with improper purpose in appealing the Bankruptcy Court’s decision, and that the District Court was well-within its discretion in deciding that the requisite standard for imposition of sanctions under § 1927 had been met. The only question, with any arguable merit whatsoever on appeal before this Court, therefore, is whether Papapanayotou was given adequate due process in connection with the imposition of sanctions by the District Court. As we have explained above, we conclude that the due process was ade
 
 *120
 
 quate. The remainder of Papapanayotou’s appeal consists almost solely of the same meritless arguments raised before the Bankruptcy Court and the District Court, namely, that the Debtor should have been given notice of the sale, and that the sale was a violation of the Trustee’s fiduciary duty. Thus, we have no hesitation in deciding that Papapanayotou’s arguments on appeal — as he was previously warned by the two courts below — are frivolous.
 

 Second, Papapanayotou’s bad faith is evident, again, in the nature of his arguments to this Court. He continues in his briefs to this Court to launch the same outrageous and groundless personal attacks upon the Bankruptcy Judge, Trustee, and now also the District Court. When asked at oral argument to explain his conduct, Papapanayotou claimed only that “section 1927 does not say anything about intemperate language,” and that he stands by his statements in his papers.
 

 Also relevant to our inquiry is the fact that Papapanayotou’s behavior is repetitive. He has been sanctioned once before in the Southern District of New York,
 
 see M.A.S. 284 Parking Corp. v. Robinson Brog Leinwand Greene Genovese & Gluck,
 
 No. 97 CIV. 6035, 1998 WL 526433 (S.D.N.Y. Aug.20,1998),
 
 aff'd,
 
 No. 99-5042, 1999 WL 1295816 (2d Cir. Dec.23, 1999), and his conduct in that case mirrors his conduct here: he was sanctioned in the district court for filing a frivolous appeal of the bankruptcy court’s decision, using intemperate language, and making baseless fraud and collusion accusations against the bankruptcy judge, which he continued in his brief on appeal to this Court. For example, he called the bankruptcy judge a “bigot donning the judicial garb of a bankruptcy judge openly assuming the role of an advocate of Defendants’ cause.” Affidavit of Joshua J. Angel in Support of Trustee’s Motion for Sanctions, Ex. H at 41.
 

 Thus, we conclude that the frivolous arguments pursued on appeal of the District Court’s imposition of sanctions, together with the repetitive bad faith in this case, and against the background of his questionable conduct in another case, warrant imposition of sanctions pursuant to Rule 38.
 
 [5]
 

 See, e.g., Moore v. Time, Inc.,
 
 180 F.3d 463, 463-64 (2d Cir.) (per curiam) (granting motion for sanctions against a
 
 ;pro se
 
 plaintiff for pursuing an appeal despite a magistrate judge’s “strong admonition that his complaint presented no non-frivolous claims,” the fact that his appellate brief had no merit to it, and “[pjarticu-larly in light of the fact that this is not the first frivolous appeal Moore has brought to this court”),
 
 cert. denied,
 
 — U.S. -, 120 S.Ct. 331, 145 L.Ed.2d 258 (1999);
 
 Knipe,
 
 999 F.2d at 710-11
 
 (sua sponte
 
 ordering counsel for appellants to show cause why Rule 38 sanctions should not be imposed where the argument was “entirely frivolous” and appellant alleged to the Court that the district court judge acted as an “advocate”). •
 

 CONCLUSION
 

 For the reasons explained above, the District Court’s imposition of sanctions on Papapanayotou is affirmed and the Trustee’s motion for sanctions against Papapa-nayotou on appeal is granted. In addition, Papapanayotou’s cross-motion for sanctions against the Trustee on appeal, which is based upon allegations similar to those described above, is denied.
 

 
 *121
 
 We order that double costs in this Court and attorneys’ fees in the amount of $5,000 be awarded against Papapanayotou, to be paid to the Trustee. We further order that the Clerk of this Court shall not accept any more papers from Papapanayotou except upon proof of payment of the sanctions imposed by this Court and the District Court.
 
 See, e.g., Schiff,
 
 919 F.2d at 834-35. This prohibition against further filings does not apply to any petition for rehearing, petition for rehearing in banc, or petition for certiorari in this ease.
 

 We further direct the Clerk of the Court to transmit a copy of the record and this opinion to the Grievance Committee of the Southern District of New York and to the Departmental Disciplinary Committee, First Judicial Department in New York, where Papapanayotou is admitted to practice law, for investigation and appropriate action. We order that the mandate issue forthwith and that the judgment of this Court include the provisions for double costs and attorneys’ fees as ordered above.
 

 [1]
 

 . The Debtor is referred to in the record and by the District Court and the Bankruptcy Court, variously, as "60 East 80th Equities, Inc.”, "60 E. 80th Street Equities, Inc.”, and
 
 *112
 
 "60 East 80th Street Equities, Inc.” Because the parties refer to the Debtor as "60 East 80th Street Equities, Inc.” in their briefs to this Court, we shall in this opinion as well.
 

 [2]
 

 . Eventually it was discovered that Slabakis had at least $100,000 that he had managed to hide from his creditors, which Dorlexa was able to recover through a turnover proceeding pursuant to N.Y. C.P.L.R. § 5225(b) (McKinney 1998) against the Commissioner of Finance in New York Supreme Court.
 

 [3]
 

 . We additionally note that Papapanayotou reasonably should have expected that he might face sanctions by the District Court based on the Bankruptcy Court’s definitive characterization of his arguments as frivolous.
 

 [4]
 

 . Actually, the Trustee filed a motion requesting sanctions under Rule 38, § 1927, Rule 11, and the Court’s inherent powers. Given those options, we think it most appropriate for sanctions to be imposed, if at all, under Rule 38. Rule 11 is generally employed in the district court, whereas Rule 38 is used to sanction groundless appeals.
 
 See In re Martin-Trigona, 9
 
 F.3d 226, 227 (2d Cir.1993) (explaining that Rule 11 authorizes sanctions for groundless lawsuits, and Rule 38 authorizes damages for taking a frivolous appeal). And, while Rule 38, § 1927, and the Court’s inherent power are all available to an appellate court,
 
 see, e.g., Bartel Dental Books Co. v. Schultz,
 
 786 F.2d 486, 491 (2d Cir.),
 
 cert. denied,
 
 478 U.S. 1006, 106 S.Ct. 3298, 92 L.Ed.2d 713 (1986), most of our cases have imposed sanctions, even when the motion was made on multiple grounds, under Rule 38.
 

 [5]
 

 . Further, while we have not explicitly held, in contrast to other circuits,
 
 see, e.g., Braley,
 
 832 F.2d at 1511, that Rule 38 allows for sanctions against an attorney personally, as opposed to the litigant, we have without discussion imposed such sanctions on attorneys,
 
 see, e.g., Knipe v. Skinner,
 
 999 F.2d 708, 711 (2d Cir.1993)
 
 (sua sponte
 
 ordering appellant’s counsel to show cause why he alone should not pay double costs and fees under Rule 38 for filing a frivolous appeal). Here, given that the appeal pertains only to sanctions imposed against Papapanayotou, Rule 38 sanctions against him personally are particularly appropriate.