17-4151; 18-668 (L)
Knopf v. Esposito

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of February, two thousand twenty.

**PRESENT:**
> **RALPH K. WINTER,**
> **SUSAN L. CARNEY,**
> **JOSEPH F. BIANCO,**
> *Circuit Judges.*

---

**MICHAEL KNOPF and NORMA KNOPF,**

> *Plaintiffs-Appellants*,

> v.

**FRANK M. ESPOSITO, DORSEY & WHITNEY LLP, NATHANIEL H. AKERMAN, EDWARD S. FELDMAN, and MICHAEL H. SANFORD,**

> *Defendants-Appellees.***

**Nos. 17-4151, 18-668 (L), 18-2193 (Con)**

---

**FOR PLAINTIFFS-APPELLANTS:**
ERIC W. BERRY, Berry Law PLLC, New York, NY; Gary Greenberg, Esq., New York, NY.

---

* The Clerk of Court is directed to amend the caption as above.

**FOR DEFENDANTS-APPELLEES
FRANK M. ESPOSITO:**

FRANK MICHAEL ESPOSITO, ESQ, Esposito Partners, New York, NY.

**DORSEY & WHITNEY LLP, NATHANIEL H. AKERMAN:**

ANTHONY P. BADARACCO, Nathaniel H. Akerman, Richard Silberberg, Dorsey & Whitney LLP, New York, NY.

**EDWARD STEVEN FELDMAN:**

EDWARD STEVEN FELDMAN, ESQ., Feldman & Associates, PLLC, Englewood, NJ.

**MICHAEL HAYDEN SANFORD:**

MICHAEL HAYDEN SANFORD, pro se, Montauk, NY.

Appeal from a judgment and post-judgment orders of the United States District Court for the Southern District of New York (Cote, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment and orders of the District Court are **VACATED,** the case is **REMANDED** for further proceedings, and the motions to supplement the record on appeal are **DENIED**.

Appellants Michael Knopf and Norma Knopf (the "Knopfs") appeal from a judgment of the United States District Court for the Southern District of New York (Cote, *J.*) dismissing their 42 U.S.C. § 1983 conspiracy claim for failure to state a claim and the court's post-judgment orders granting attorney's fees and sanctions to some of the defendants. The Knopfs also move in this Court, in two separate motions, to supplement the record on appeal.

As alleged in their complaint, in 2006, the Knopfs made loans totaling several million dollars to Michael Hayden Sanford ("Sanford") and his company, Pursuit Holdings, LLC ("Pursuit"), to enable Sanford to purchase several pieces of real property in New York City (the

"Properties")—including, as relevant here, a penthouse condominium (the "PHC")—through Pursuit. In connection with the loans, Pursuit and Sanford signed a contract agreeing to execute mortgages in the Knopfs' names on the Properties, and promising not to sell the Properties without the Knopfs' consent.

Sanford and Pursuit never executed those mortgages, however, nor did they repay the loans. Accordingly, in 2009, the Knopfs sued Sanford and Pursuit in the New York State Supreme Court for breach of contract. In 2013, that court denied the Knopfs' motion for summary judgment. In 2014, however, the New York Appellate Division reversed and directed entry of summary judgment for the Knopfs with respect to their breach of contract claim. Because the trial court had not yet assessed the amount of the Knopfs' damages, the Appellate Division did not enter a final judgment.

Meanwhile, in the trial court, the Knopfs made multiple attempts to prevent Sanford from selling the PHC and to secure the proceeds of any sale for payment of Sanford's debt to them. The state trial courts declined to grant the Knopfs the stays they sought, and the Knopfs pursued two separate appeals of those denials. Both of these were pending in the Appellate Division in 2015 when, in conjunction with those appeals, the Appellate Division ordered that any proceeds from the sale of the PHC be placed in escrow (the "October 2015 Order"). It further denied the Knopfs' application for a preliminary injunction barring any sale of the PHC (the "November 2015 Order") and denied Sanford's cross-motion seeking to vacate the October 2015 Order (the "December 2015 Order").

On February 1, 2016, Sanford and Pursuit sold the PHC. The Knopfs allege that they learned of the sale several weeks later, on February 24. On the Knopfs' motion, the Appellate Division ordered on February 25 that the sale proceeds be placed into escrow and prohibited Sanford from selling others of the Properties. But by then, Sanford had disposed of the bulk of the

proceeds from the PHC's sale. In June 2016, the Appellate Division denied the Knopfs' motion to hold Sanford in contempt for violating court orders, explaining in an order that the October 2015 escrow requirement had been vacated by the November 2015 Order (the "June 2016 Order").

In August 2017, the Knopfs filed suit in federal court, alleging that Sanford, working with several attorneys and a law firm in the state court proceeding, conspired in violation of 42 U.S.C. § 1983 to deprive the Knopfs of their constitutional right to due process. In sum, in this suit the Knopfs alleged as follows: At some point in late 2015 or early 2016, Sanford hired Frank Esposito (an attorney) knowing that Esposito was married to Melissa Ringel, an attorney employed by the Appellate Division to provide services to that court. On Sanford's behalf, Esposito discussed with Ringel the series of orders issued by the Appellate Division with regard to the PHC. As a result of these discussions, Ringel agreed to opine to the lawyers adverse to the Knopfs in their dispute with Sanford and Pursuit that the net effect of the three Appellate Division orders was to eliminate any restraints on Sanford's sale of the PHC or on the proceeds of any such sale. Esposito relayed Ringel's agreement to Sanford, who then directed two of his other lawyers—Nathaniel Akerman (of the law firm Dorsey & Whitney LLP) and Edward Steven Feldman—to call the Appellate Division and request "clarification" about the orders' effect. App'x 131. Akerman and Feldman did so, and spoke with Ringel by phone in January 2016. Ringel opined as agreed, advising Sanford's attorneys that any restraints that the Appellate Division may have earlier placed on the sale of the PHC or its proceeds were removed. Sanford then used Akerman's and Feldman's summary of that call to convince a potential buyer to proceed with the sale of the PHC. Needless to say, the Knopfs and their attorneys did not know of the call and were not present for it.

An investigation by the New York State Unified Court System Office of Court Administration ("OCA") began in July 2017 and was completed in March 2018. The Appellate Division determined that certain of the factual findings would be relevant to the District Court,

4

and so the Appellate Division provided the District Court with copy of its report (the "OCA Report") in April 2018. *See* OCA Report, *Knopf v. Esposito*, 17-cv-5833 (Apr. 24, 2018), ECF No. 129-2. The OCA Report revealed that Akerman and Feldman called Ringel's direct line at the Appellate Division, despite the fact that her phone number was not available on the court's website. They accepted her opinion as an authoritative clarification, notwithstanding that she was a mediation attorney, not an attorney in the Clerk's Office, and that the Knopfs and their attorneys were not present.

We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision to vacate and remand the District Court's judgment dismissing the Knopfs' complaint. We also deny as unnecessary the Knopfs' motions to supplement the record.

## I.     Dismissal Order

We review de novo a district court's dismissal of a complaint for failure to state a claim. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss, the district court is bound to construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers*, 282 F.3d at 152. Further, "[a] court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (finding antitrust conspiracy claim plausible where complaint specifically alleged, *inter alia*, that several of the defendants met and communicated with each

other in a short period of time immediately before conduct causing alleged harm).

To state a claim for § 1983 conspiracy, a plaintiff must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). A complaint that contains "only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights," or "diffuse and expansive allegations," is properly dismissed; to be viable, a complaint must allege "specific instances of misconduct." *Id.* at 325 (internal quotation marks omitted). Further, "a plaintiff alleging a § 1983 conspiracy claim must prove an actual violation of constitutional rights." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). As relevant here, constitutional guarantees of procedural due process generally require "that a deprivation of life, liberty, or property be preceded by notice and opportunity for [a] hearing appropriate to the nature of the case." *Chase Grp. All. LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010) (internal quotation marks omitted).

On this appeal, we review the District Court's December 2017 order granting defendants' motion to dismiss, which the District Court published *before* the OCA Report described above issued. The District Court's order explained that: (1) it found the conspiracy allegations to be conclusory and implausible, and (2) it identified the cause of the Knopfs' alleged harm as the Appellate Division's June 2016 Order (which would not be actionable under § 1983), and not the January 2016 phone interaction with Ringel (which would). This reasoning was erroneous.

*First*, in concluding that the Knopfs' conspiracy allegations were implausible, the District Court impermissibly drew inferences in favor of defendants: The complaint did not allege that Akerman and Feldman spoke with Ringel as the result of a random or coincidental transfer, as the District Court mistakenly inferred. *Knopf v. Esposito*, No. 17-cv-5833, 2017 WL 6210851, at *7

6

(S.D.N.Y. Dec. 17, 2017). Rather, it alleged that Akerman and Feldman "requested somebody by 'position'" and were then transferred to Ringel. App'x 131-32. Further, that the call made by Akerman and Feldman, seeking "clarification," was transferred to and handled by Ringel—a mediation attorney whose role did not involve giving procedural (or substantive) advice on pending appeals, and who had no apparent connection to the case except for her marriage to one of Sanford's lawyers—at least made it plausible that Akerman and Feldman had knowingly and specifically sought to speak to her, with the expectation that she would advise as she did, as the complaint alleged. On a motion to dismiss, district courts may not simply disregard allegations in the complaint and credit instead an alternative narrative advanced by defendants. *See Chambers*, 282 F.3d at 152. The Knopfs' allegations were specific enough and, as was later borne out, all too plausible.

Moreover, the complaint here contained allegations regarding defendants' actions that were specific as to timing and substance. These included that: (1) Sanford hired Esposito shortly before the phone call, knowing that he was married to Ringel; (2) Esposito and Ringel spoke about the case prior to the phone call, and Esposito told Sanford what Ringel would say about the court orders; (3) Sanford directed Akerman and Feldman to call the Appellate Division about those orders the next day, and the two lawyers did so; and (4) all of those parties obtained a financial benefit immediately after the sale closed. *Cf. Ciambriello*, 292 F.3d at 325 (finding that conspiracy allegations were conclusory because there were no "details of time and place" (internal quotation marks omitted)). Taken together and viewed as a whole, the complaint's allegations adequately stated a claim for conspiracy under the standards we have articulated. Indeed, in deciding the Knopfs' Rule 60(b) motion for reconsideration, with the benefit of the OCA Report and in light of phone records showing that Akerman and Feldman contacted Ringel on her direct line at the Appellate Division, the District Court acknowledged that "the existence of a conspiratorial

7

agreement among at least some of the defendants" was "more plausible." App'x 2251-52.

*Second*, the District Court erred when it concluded that the harm the Knopfs complained of—that is, losing their rightful collateral and a priority claim on the sale's proceeds—resulted from the Appellate Division's orders declining to enjoin the sale of the PHC, and not the January 2016 phone call in which Ringel advised the lawyers that the orders were no longer in effect. The Knopfs sufficiently alleged in the District Court that the sale of the PHC (and Sanford's subsequent disposal of the assets from that sale) would not have occurred absent the January 2016 phone call because they also plausibly alleged that the prospective buyer refused to close on the sale while any judicial restraints remained. The opinion that Ringel gave on the January phone call was what ultimately assuaged the buyer's concerns and allowed the sale to go forward, according to the Knopfs. The Knopfs also alleged that Sanford's attorneys initiated the call to Ringel for the express purpose of dissuading the buyer's attorney from filing a motion for clarification. Thus, contrary to the District Court's conclusion, the complaint plausibly alleged that the Knopfs would not have been harmed had the phone call to Ringel not taken place. If the Knopfs had at least participated in the phone call, they would have been aware that Sanford and the buyer intended to act on Ringel's opinion, and they could have sought emergency relief in time to force the escrow of the sale proceeds. In any event, the Knopfs stated a colorable due process claim, even if Ringel's interpretation of the orders were correct, because "[t]he right to be heard does not depend upon an advance showing that one will surely prevail at the hearing." *See Fuentes v. Shevin*, 407 U.S. 67, 87 (1972).

Defendants propose several alternative bases for upholding the District Court's dismissal of the Knopfs' action. None is persuasive.[2] They first argue that the January 2016 phone call did

---

[2] We note that, although certain of defendants are proceeding pro se, pro se attorneys are not entitled to the special solicitude that courts traditionally afford to pro se litigants. *See Tracy v.*

8

not violate the Knopfs' due process rights—or even constitute an improper ex parte communication—because it concerned only a procedural question, not the merits of the case. As the OCA Report confirms, however, that simply is not the case: The phone call *did* amount to an ex parte conversation on a matter pending in the Appellate Division, and Ringel's statements were, at the very least, a hybrid of substantive legal advice and procedural information. These statements were improper.

Next, defendants urge that the Knopfs' claim is barred by collateral estoppel. [3] But estoppel, or issue preclusion, applies only if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Vargas v. City of New York*, 377 F.3d 200, 205-06 (2d Cir. 2004) (internal quotation marks omitted). Thus, to the extent that defendants propose that the Appellate Division's June 2016 Order estops any further litigation of whether the October 2015 escrow requirement was in effect when the attorneys placed the January 2016 phone call, they miss the point. That issue does not affect the viability of the Knopfs' claims, which derive from the harm done by the January 2016 phone call, not the effects of any of the state

---

*Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[A] lawyer representing himself ordinarily receives no such solicitude at all."); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001) (pro se attorneys typically cannot claim special consideration courts customarily grant pro se parties). Sanford is not an attorney; however, his brief simply reiterates, and at times copies verbatim without attribution, the arguments found in the other defendants' briefs.

[3] Sanford additionally argues that res judicata bars relitigation of whether the October 2015 Order was in effect at the time of the sale, because that question was already decided by the state courts. This argument sounds in collateral estoppel, not res judicata. *Compare Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455 (1985) ("[C]ollateral estoppel precludes a party from relitigating an *issue* which has previously been decided against him . . . ." (emphasis added) (internal quotation marks omitted)), *with Matter of Josey v. Goord*, 9 N.Y.3d 386, 389 (2007) ("The doctrine of res judicata precludes a party from litigating a *claim* where a judgment on the merits exists from a prior action between the same parties involving the same subject matter . . . ." (emphasis added) (internal quotation marks omitted)). In any event, he is wrong.

court orders. Even if the Knopfs are collaterally estopped from litigating questions involving the escrow requirement—a question we do not decide—their § 1983 conspiracy claim is not barred.[4] No court has actually and necessarily decided the issues crucial to the Knopfs pursuing their conspiracy claim—namely, whether the agreement and phone call with a court attorney denied them due process.

Defendants next maintain that Ringel was not a state actor because she did not have decisionmaking authority and, in any event, her actions were unauthorized. Defendants' arguments are foreclosed by the Supreme Court's and our Court's case law. *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 49 (1988) (stating that a public official is a state actor where he is "clothed with the authority of state law" (internal quotation marks omitted)); *United States v. Temple*, 447 F.3d 130, 138 (2d Cir. 2006) ("One who abuses a position given to him or her by the government is said to act under color of law."); *United States v. Giordano*, 442 F.3d 30, 44 (2d Cir. 2006) (holding that a public official's use of official power that causes the deprivation of a constitutional right constitutes state action even if the official had personal reasons for acting as he did).

Defendants also urge that the Knopfs had no property interest in the PHC or in any proceeds from its sale when the January 2016 phone call was made because the Knopfs had not yet obtained final judgment or a damages award in their state court breach of contract action. This proposition ignores the fact that the Knopfs had by then won summary judgment on their breach of contract claims against Sanford, and their constructive trust claims were pending. The Knopfs therefore

---

[4] Furthermore, at least one state (trial) court has come to the opposite conclusion, ruling that the escrow order appeared to still be in effect when the phone call took place. *Knopf v. Sanford*, 65 Misc. 3d 463, 478-79, 489 (Sup. Ct. N.Y. Cty. 2019). The Knopfs' arguments that collateral estoppel would not bar the relitigation of the meaning of the Appellate Division orders because they did not have a full and fair opportunity to contest that reasoning is at least arguably colorable and may in the end prevail.

had a viable equitable interest in the PHC, as further evidenced by their subsequent success in obtaining restrictions on the sale of the PHC throughout the state court litigation. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982) ("[A] cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause."); *cf. Luis v. United States*, 136 S. Ct. 1083, 1093 (2016) (describing various contexts where persons with "future . . . interest[s]" in a property can obtain restrictions on the property in the present).

Finally, defendants claim that the Knopfs had sufficient notice and an opportunity to be heard before they were deprived of any interest they had in the PHC or its proceeds. This claim falls far short of the mark. No one has disputed that the Knopfs had no notice of or opportunity to be heard during the January 2016 phone call. In fact, they allege that they did not learn of it until weeks after. The post-deprivation process then available to the Knopfs was undeniably insufficient to protect their interests. Indeed, by the time the Knopfs learned of the sale (and obtained another escrow order), most of the sale proceeds had been dissipated.

For these reasons, we vacate the District Court's dismissal of the Knopfs' complaint and remand the cause for further proceedings.

## II.    Fees and Sanctions

In its second order following dismissal of the case, the District Court found the Knopfs and Eric W. Berry (the Knopfs' attorney) jointly and severally liable to Dorsey & Whitney LLP for fees under 42 U.S.C. § 1988 and sanctions under 28 U.S.C. § 1927. We review an order imposing attorney's fees under § 1988 for abuse of discretion. *See Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 934 F.3d 238, 243 (2d Cir. 2019).

"As the decisions of this Court demonstrate, it is very rare that victorious defendants in civil rights cases will recover attorneys' fees." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 178 (2d Cir. 2006). Thus, we have explained:

11

> A court should award defendants attorney's fees under section 1988 only if the plaintiff's claim was frivolous, unreasonable, or groundless, or the plaintiff continued to litigate after it clearly became so. Though a showing that the plaintiff acted in bad faith will further support an award under section 1988, the determination generally turns on whether the claim itself is clearly meritless.

*Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir. 1994) (internal quotation marks, citations, and alterations omitted).

We similarly review an order imposing sanctions under 28 U.S.C. § 1927 for abuse of discretion. *See Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009). A court may sanction an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. A sanctions award under § 1927 requires a showing that an "attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay," and "a finding of conduct constituting or akin to bad faith." *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000) (internal quotation marks and citations omitted).

For the reasons discussed above, the Knopfs' complaint plausibly alleged a § 1983 claim. Thus, the District Court exceeded the permissible bounds of its discretion in awarding fees to defendants under § 1988 because the complaint was not frivolous. *See Rounseville*, 13 F.3d at 632. Likewise, with respect to its award of sanctions under § 1927, it erred because Berry's action (in bringing the complaint) was not "completely without merit." *See In re 60 E. 80th St. Equities*, 218 F.3d at 115.

### III.    Motions to Supplement the Record

Generally, on appeal we may consider only material that was part of the record below (*i.e.*, the documents and exhibits filed on the district court docket, any transcripts of proceedings, and a certified copy of the district court docket entries). *See* Fed. R. App. P. 10(a). Providing a small measure of flexibility, Rule 10(e)(2) of the Federal Rules of Appellate Procedure provides that,

"[i]f anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified" by this Court. Fed. R. App. P. 10(e)(2)(C). A motion to supplement the record under Rule 10(e)(2) cannot, however, be used to introduce new evidence. *DiBella v. Hopkins*, 403 F.3d 102, 118 (2d Cir. 2005) (citing Fed. R. App. P. 28(j)).

We now deny the Knopfs' motions Rule 10(e) to supplement the record on appeal. The Knopfs have not established that the materials they wish to submit were omitted by error or accident (instead, they concede that the materials are newly discovered) or that extraordinary circumstances warrant consideration of new evidence.

\* \* \*

We have considered all of the parties' remaining arguments and conclude that they are without merit. Accordingly, we **VACATE** the judgment and post-judgment orders of the district court, **REMAND** for further proceedings, and **DENY** the motions to supplement the record.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court