112 F.3d 91
 65 USLW 2715, 42 U.S.P.Q.2d 1614
 TED LAPIDUS, S.A., Plaintiff-Appellee,
v.
Avrom R. VANN, Esq., Appellant,
and
77 World Design, Inc., Designers Only, Inc., Names for
Dames, Inc., Stanley Warner, Rochelle Pazer, Jack
Welikson, various John Does, Jane Does
and XYZ Companies
(unidentified), Defendants.
 No. 1176, Docket 96-9043.
 United States Court of Appeals,
Second Circuit.
 Argued March 20, 1997.
Decided April 25, 1997.
 
 Avrom R. Vann, New York City (Vann & Slavin, P.C., of counsel), for Appellant.
 Bruce L. Adams, New York City (Adams & Wilks, of counsel), for Plaintiff-Appellee.
 Before: FEINBERG and PARKER, Circuit Judges, and SHADUR*, District Judge.
 FEINBERG, Circuit Judge.
 
 
 1
 Avrom R. Vann, Esq., attorney for defendants 77 World Design, Inc. (77 World) and its president and chief executive officer Stanley Warner, appeals from an order entered in the United States District Court for the Southern District of New York, Miriam Goldman Cedarbaum, J., awarding sanctions against Vann pursuant to 28 U.S.C. § 1927. The controversy started as a trademark infringement suit brought by plaintiff Ted Lapidus, S.A. (Lapidus) against defendants 77 World, Warner and others, in the course of which Lapidus caused a court-ordered seizure of allegedly infringing goods at the business premises of 77 World. This brought about counterclaims by defendants and an attempt by them to bring a third-party complaint against agents of Lapidus based upon alleged improprieties in executing the seizure. Lapidus then filed a motion seeking sanctions against Vann under Fed.R.Civ.P. 11, alleging that the third-party complaint was procedurally improper, that defendants needed leave of court to assert their claims, and that they refused to voluntarily dismiss the third-party complaint despite clear warning from the district court that it would not grant such leave. The district court noted that Lapidus had "failed to comply with the procedural requirements of Rule 11." The judge nevertheless awarded sanctions against Vann sua sponte under 28 U.S.C. § 1927 in the amount of $10,000. Because we believe that Vann did not receive sufficient notice that § 1927 would be invoked against him, we vacate the award and remand.
 
 I. Facts and Proceedings Below
 
 2
 Lapidus manufactures high fashion wearing apparel and related accessories, which it markets under the registered trademark TED LAPIDUS. The clothing is also produced by other companies under license.
 
 
 3
 Lapidus commenced the underlying trademark infringement action in October 1994. The complaint alleged that 77 World and certain other clothing manufacturers, former licensees of Lapidus, and their officers were engaged in counterfeiting and marketing bogus TED LAPIDUS clothing. Concerned that the defendants would transfer or destroy the allegedly counterfeit goods, Lapidus obtained an ex parte court order authorizing the United States Marshal to search defendants' business premises and seize any infringing items bearing the Lapidus trademark. The order provided that the Marshal was to be assisted by one or more of plaintiff's attorneys or agents. It further provided that "if it is impractical to obtain assistance from [the] U.S. Marshal and deputies and other law enforcement agents, then employees and agents of Associated Investigative Services, Inc. [Associated], a licensed and bonded private investigative service experienced in the civil seizing of counterfeit products," would be permitted to search for and seize the infringing items. The order further provided that "[t]he U.S. Marshal or his or her deputy and/or other law enforcement agents shall at his or her discretion, arrest any defendant who attempts to obstruct or prevent service and seizure."
 
 
 4
 Lapidus caused its agents to search the premises of 77 World the same day the ex parte order was signed. According to defendant Warner, the search was conducted by Associated, its employee David Woods, Lapidus's attorney Bruce Adams, and other agents of Adams's law firm, Adams & Wilks, all under the direction of Adams. Warner claims that the searchers did not identify themselves or present him with a copy of the search order. When Warner took steps to protect the property of 77 World, one of the searchers called in the New York City Police. The police handcuffed Warner based on a complaint by one of the Lapidus agents present, but released him a half-hour later. Lapidus claims to have seized during the search "many thousands" of falsely labeled garments and "documentation revealing the unauthorized sale of millions of dollars" of such garments.
 
 
 5
 In their answer to plaintiff's complaint, Warner and 77 World asserted a counterclaim against Lapidus for violation of the seizure order and Warner alleged an additional counterclaim for false arrest. In June 1995, some seven months after serving their answer, Warner and 77 World served and filed a document entitled "Third Party Complaint," naming Adams & Wilks, Adams, Associated, and Woods as third-party defendants. The third-party complaint asserted claims for breach of the seizure order and for false arrest of Warner. The complaint was signed by Vann.
 
 
 6
 In July 1995, Adams advised Vann by letter that he believed the claims raised in the third-party complaint could not be maintained, that Vann could have discovered this upon reasonable inquiry, and that he had therefore violated Fed.R.Civ.P. 11. Adams threatened to seek sanctions against Vann and defendants for filing a frivolous claim unless the third-party complaint and "related counterclaims" were withdrawn by the following day. Later that month, in an unrecorded pre-motion conference, the district court apparently advised Vann that, assuming it had jurisdiction over claims alleged in the third-party complaint, in the exercise of its discretion it would not grant leave to add those claims to the underlying action. Vann denies that the court made any clear ruling.
 
 
 7
 In August 1995, Adams again informed Vann that he would move for sanctions if Vann did not promptly withdraw the third-party complaint and counterclaims. Adams also sent Vann a proposed motion to dismiss the third-party complaint and draft memorandum of law, which were not filed at that time with the district court. Adams sent two additional letters during the month of August, advising Vann of his intention to move for Rule 11 sanctions and for dismissal of the third-party complaint. Vann continued to refuse to withdraw the third-party complaint based on his belief that the claims were properly made.
 
 
 8
 In September 1995, Warner moved to disqualify Adams from representing Lapidus on the ground that Adams was a defendant in the third-party action and would be a necessary witness with respect to the counterclaims and the third-party claims.[1] The district judge denied the motion, pointing out that bringing a motion to disqualify counsel on a ground that Vann had himself created demonstrated bad faith.
 
 
 9
 The next day, Adams served and delivered to the district court Lapidus's motion to strike the third-party complaint and for Rule 11 sanctions (the Rule 11 motion). Attached to it was a memorandum of law, which the district judge characterized as "similar but not identical to" the draft included with Lapidus's earlier letter threatening to move for sanctions. That memorandum asserted that Vann's motion was improper under Fed.R.Civ.P. 14, and that additional parties could only be joined pursuant to Fed.R.Civ.P. 20, which requires leave of the court. Lapidus sought sanctions, representing legal fees incurred in opposing defendants' third-party complaint for Vann's failure to follow proper procedure and his refusal to voluntarily dismiss the third-party complaint. Neither the papers filed in support of Lapidus's motion nor the letters sent earlier by Adams threatening to seek such sanctions referred to any basis for sanctions other than Rule 11.
 
 
 10
 After receiving Lapidus's Rule 11 motion, Vann advised the court that defendants were "willing to consent to the entry of an Order discontinuing without prejudice and without costs or disbursements to any party as against the other, the third party complaint." Vann submitted a proposed order. Adams responded that Lapidus did not consent to the proposed order to the extent that it did not provide for an award to Lapidus of attorneys' fees.
 
 
 11
 In October 1995, supported by an affidavit by Vann, Warner cross-moved for leave nunc pro tunc to serve and file the third-party complaint and for sanctions against Adams and Lapidus under Rule 11. Defendants also responded, in a single paragraph of Vann's affidavit, to Lapidus's Rule 11 motion, arguing that it was procedurally improper under the Rule's "safe harbor" provision. See Fed.R.Civ.P. 11(c)(1)(A).
 
 
 12
 The district court held a hearing later that month (the October 1995 hearing) on Lapidus's motion to dismiss the third-party complaint and for sanctions and on Warner's cross-motion. During the hearing, the judge again stated that she would not exercise jurisdiction over the claims in the third-party complaint. Vann agreed to withdraw the complaint, and submitted a notice of voluntary dismissal the following week.
 
 
 13
 The district judge reserved decision on Lapidus's motion for Rule 11 sanctions. Although the motion mentioned only Rule 11 as a ground for sanctions, the judge indicated that she was considering another basis for sanctions. At one point she stated, "forget Rule 11. Multiplication of the litigation and duplication of papers is prohibited in the Judiciary Act. I am just looking for the provision. It really is just a limit to how much paper lawyers can generate, which does nothing but proliferate other papers." Toward the end of the hearing, the judge indicated that she might "impose sanctions under a different provision."
 
 
 14
 In an opinion dated August 6, 1996, the judge noted that Lapidus's motion for sanctions did not comply with Rule 11 in two respects: it was "not made separately from another motion" and "Lapidus presented [it] to the court less than twenty-one days after serving it," thereby violating the Rule's safe harbor provision. The judge nonetheless sanctioned Vann in the amount of $10,000,[2] under 28 U.S.C. § 1927, concluding that "[i]n any event, the provisions of [that section] better capture the impropriety of Vann's actions." This appeal followed.
 
 II. Discussion
 A. Jurisdiction
 
 15
 In their original briefs to us, neither party focused on this court's jurisdiction over this appeal. We raised the issue sua sponte, and asked the parties to be prepared for questions on it at oral argument. At that time, we requested submission of letter briefs, which we have since received.
 
 
 16
 The federal courts generally abide by the "final judgment" rule, under which the courts of appeals ordinarily have jurisdiction only over appeals from "final decisions" of the district courts, see 28 U.S.C. § 1291, a term that the Supreme Court has interpreted to mean "a decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 373, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981) (internal quotation marks omitted). The final judgment rule, among other things, "serves the important purpose of promoting efficient judicial administration," id. at 374, 101 S.Ct. at 673, by avoiding piecemeal litigation and eliminating the delays caused by interlocutory appeals. See Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 430, 105 S.Ct. 2757, 2760-61, 86 L.Ed.2d 340 (1985).
 
 
 17
 However, it has long been established that a small class of orders that do not terminate the underlying litigation are appealable as collateral orders despite the finality requirement of 28 U.S.C. § 1291.[3] Cohen v. Beneficial Indust. Loan Corp., 337 U.S. 541, 546-47, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949). To be immediately appealable, an order must meet three criteria: "[T]he order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978).
 
 
 18
 With regard to the first of these criteria, the $10,000 assessment has been conclusively determined and reduced to a sum certain. Cf. Cooper v. Salomon Bros., Inc., 1 F.3d 82, 84-85 (2d Cir.1993). With regard to the other two criteria, we believe our prior decisions require us to hold that they are satisfied, as well.
 
 
 19
 In support of jurisdiction, Vann relies heavily on Cheng v. GAF Corp., 713 F.2d 886 (2d Cir.1983). In that complicated litigation, after the parties had made two trips to the Supreme Court, see id. at 888, the district court assessed plaintiff Cheng's lawyer $1,000 under § 1927 for his allegedly "unreasonable and vexatious" attempts to disqualify GAF's counsel. The sanctioned conduct was an unsuccessful petition to this court for a writ of mandamus ordering the district judge to disqualify GAF's counsel and a subsequent application for a writ of certiorari to the Supreme Court. The district judge assessed sanctions against Cheng's lawyer, "not for a motion before the district court, but for the petitions filed in the appellate courts." Id. On appeal to this court, the majority of the panel over a vigorous dissent determined that we had jurisdiction to review the sanction award and reversed it.[4]
 
 
 20
 Our decision in Cheng might easily have been limited to its "unusual facts." Id. at 890. The case is cited for the proposition that it is improper for a district court to impose sanctions for appeals taken to the circuit court. Schoenberg v. Shapolsky Publishers, Inc., 971 F.2d 926, 935 (2d Cir.1992); In re Emergency Beacon Corp., 790 F.2d 285, 288 (2d Cir.1986). In this light, Cheng might plausibly have been read as an action similar to mandamus because the district court had clearly exceeded its authority.
 
 
 21
 Cheng has, however, been relied on in a number of decisions in this circuit broadly authorizing a non-party attorney to bring an immediate appeal from an award of sanctions. E.g. Satcorp Int'l Group v. China Nat'l Silk Import & Export Corp., 101 F.3d 3, 5 (2d Cir.1996) (Rule 37 sanctions); Thomas E. Hoar, Inc. v. Sara Lee Corp., 882 F.2d 682, 685-86 (2d Cir.1989) (same); Sanko S.S. Co. v. Galin, 835 F.2d 51, 53 (2d Cir.1987) (Rule 11 sanctions); see also United States v. Johnson, 801 F.2d 597, 599 (2d Cir.1986) (civil contempt order against non-party witness). We see no persuasive basis on which to distinguish the present case.
 
 
 22
 We recognize that some other circuits do not agree and have denied an immediate appeal in this situation principally because sanctioned counsel would have a right to appeal later and because the sanction order "may not be entirely separable from the underlying case." See Sanders Assocs., Inc. v. Summagraphics Corp., 2 F.3d 394, 395-96 (Fed.Cir.1993) (noting circuit split and collecting cases). The reasoning of those decisions that deny appealability is not without force, in view of the salutary policies that animate the final judgment rule. Application of the Cohen collateral order doctrine requires careful attention to the facts of each case. In this case, the flurry of arguments, charges and countercharges, motions and cross-motions and other papers in the district court[5] has effectively diverted for far too long the attention of the parties and the district court from the merits of the underlying trademark litigation. Were we writing on a clean slate, we would be tempted to confine Cheng to its unusual facts and characterize the sanctions order here as nonappealable under the Cohen doctrine. However, we are constrained by our precedents, and we therefore conclude that we have jurisdiction to hear this appeal.
 
 B. Insufficiency of Notice
 
 23
 We turn now to the award of sanctions under § 1927. We review a district court's decision to impose sanctions for abuse of discretion. MacDraw, Inc. v. CIT Group Equip. Fin., Inc., 73 F.3d 1253, 1257 (2d Cir.1996). Vann raises a number of substantive objections to the award. We do not need to reach these arguments, because we agree with Vann that he was not afforded due process in the imposition of sanctions.
 
 
 24
 "[D]ue process requires that courts provide notice and opportunity to be heard before imposing any kind of sanctions." In re Ames Dept. Stores, Inc., 76 F.3d 66, 70 (2d Cir.1996) (emphasis in original). The Third Circuit has interpreted the notice requirement to mean "specific" notice of the sanctioning authority being considered and the conduct alleged to be sanctionable. See Zuk v. Eastern Pa. Psychiatric Inst. of the Med. College of Pa., 103 F.3d 294, 298 (3d Cir.1996); Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1357 (3d Cir.1990).
 
 
 25
 The purpose of particularized notice is to put counsel "on notice as to the particular factors that he must address if he is to avoid sanctions." Jones, 899 F.2d at 1357. If Rule 11 and § 1927 sanctions were identical in all respects, "particularized notice as to one sanction would arguably suffice to fully inform [counsel] as to the pendency of the other sanction." Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc., 57 F.3d 1215, 1225 (3d Cir.1995) (FE & B ). But those two sections are not identical.[6] We have noted that:
 
 
 26
 significant differences exist between Rule 11 and § 1927. For instance, Rule 11 sanctions may be imposed on both counsel and client, while § 1927 applies only to counsel. A Rule 11 violation must be based on signed pleadings, motions, or other papers. Section 1927 violations do not hinge on the presence of a paper. Rule 11 may not be employed to sanction obnoxious conduct during the course of litigation; whereas § 1927 applies to the unreasonable and vexatious multiplication of court proceedings. Rule 11 requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers, but § 1927 requires more: subjective bad faith by counsel. Finally, misconduct under Rule 11 must be judged as of the time the paper was signed, whereas § 1927 invites attention to a course of conduct, and imposes a continuing obligation on attorneys to avoid dilatory tactics.
 
 
 27
 United States v. Intern. Bhd. of Teamsters, 948 F.2d 1338, 1345-46 (2d Cir.1991) (emphasis added). We note other procedural differences as well: Section 1927 contains no counterparts to the safe harbor and separate motion requirements of Rule 11.
 
 
 28
 These differences have previously led us to conclude that, in a situation where sanctions are imposed under multiple provisions, "separate consideration of the available sanctions machinery is not only warranted, but necessary for meaningful review." Id. at 1346; see also MacDraw, 73 F.3d at 1262. We believe that a sanctioned attorney must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter. Compare Schoenberg, 971 F.2d at 934 (motion for Rule 11 sanctions not sufficient to put party on notice that order of contempt was being considered under Rule 37) with Fonar Corp. v. Magnetic Resonance Plus, Inc., 114 F.3d 355, 358-59 (2d Cir.1997) (attorney knew of charge that he had participated in dilatory discovery tactics, and notice of possible Rule 37 sanctions was sufficient to notify him that order of contempt was being considered under same Rule).
 
 
 29
 On the record before us, we cannot say that Vann received the notice to which he was entitled. Vann was notified only that Rule 11 sanctions were being sought. He came to the October 1995 hearing prepared to argue that Lapidus's Rule 11 motion was procedurally defective.[7] The issue of bad faith was not explicitly raised during that hearing, and Vann therefore was not sufficiently put on notice that this was his opportunity to defend himself against that charge. The court did ask Vann to address whether it should impose sanctions "for causing all of this unnecessary paperwork." Understandably, since no other ground for sanctions had been invoked to that point, Vann's response referred only to Rule 11.
 
 
 30
 Moreover, the district court went beyond the conduct specified in Lapidus's Rule 11 motion--Vann's refusal to withdraw the third-party complaint--and sanctioned Vann based at least in part on his "attemp[t] to use the improper third party claims as grounds to disqualify plaintiff's counsel." Although Vann perhaps should have foreseen the district court's displeasure with his actions, we think he was entitled to more specific notice and a more focused hearing before sanctions were imposed.
 
 
 31
 Lapidus argues that, since Vann has tangled before with § 1927 sanctions in an unrelated case, he was on notice here that sanctions could be imposed under that section. But " 'the mere existence of ... § 1927 does not constitute sufficient notice' " that sanctions might be imposed under that section. Zuk, 103 F.3d at 298 (quoting Jones, 899 F.2d at 1357). An attorney must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges.
 
 
 32
 Lapidus also relies on FE & B, which affirmed a sanctions award and rejected a claim that the attorney had insufficient notice. In that case, the Third Circuit took pains to point out that its holding was "a narrow one," 57 F.3d at 1225, leaving undisturbed such Third Circuit cases as Jones, which we cite with approval above. In any event, we do not believe that FE & B is contrary to our holding here. Unlike Vann, counsel in FE & B had "advance notice that the sanctioning court was contemplating the imposition of sanctions which hinged on a finding of bad faith." Id. at 1226 (emphasis in original).
 
 
 33
 For the foregoing reasons, we vacate the award of sanctions and remand the matter to the district court for further proceedings. The district judge is, of course, free to impose sanctions again in her discretion, after holding an appropriate hearing upon notice. The record makes clear that the district judge believed that defendants' claims arising out of execution of the search warrant should be heard separately from the trademark infringement claims. We certainly cannot say that such a determination would be an abuse of discretion. Indeed, we applaud her efforts to keep both parties focused on the underlying suit.[8] We note that Vann has withdrawn the offending third-party complaint at the district court's bidding. At oral argument before this court, he further agreed that if Lapidus were willing to forego sanctions, Vann would counsel his clients to withdraw the related counterclaims, reserving their right to prosecute that matter in a state court. Perhaps that will suffice to allow the trademark infringement action to proceed, unimpeded by the distraction of the search warrant claims. In any event, we leave it to the sound judgment of the district judge to resolve this acrimonious dispute as expeditiously as possible.
 
 
 34
 Vacated and remanded.
 
 
 
 *
 Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation
 
 
 [1]
 Vann vigorously contends that the district court itself, in an unrecorded pre-motion conference in July, raised the possibility that Adams might have to be disqualified as a necessary witness on the counterclaims
 
 
 [2]
 The money has apparently not yet been paid. Vann represented to this court at oral argument, without objection from Adams, that the parties have agreed not to act on the judgment until this appeal is decided
 
 
 [3]
 Certain interlocutory orders, specified in 28 U.S.C § 1292, are also immediately appealable. The section is not relevant here
 
 
 [4]
 After the remand, Cheng again moved to disqualify GAF's counsel and was successful. GAF appealed to this court and we affirmed. 747 F.2d 97 (2d Cir.1984). Thereafter, the case went to the Supreme Court for still a third time. The Court vacated the judgment and remanded the case to this court with instructions to dismiss the appeal for want of jurisdiction. 472 U.S. 1023, 105 S.Ct. 3493, 87 L.Ed.2d 626 (1985)
 
 
 [5]
 The pattern has been repeated to some extent in this court
 
 
 [6]
 Rule 11 provides for an "appropriate sanction upon the attorneys, law firms, or parties" responsible for presenting to the court a pleading, written motion or other paper that the person cannot certify upon reasonable inquiry to be warranted in law and fact and without improper purpose. Fed.R.Civ.P. 11(b), 11(c)
 Section 1927 provides that an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.
 
 
 [7]
 Vann argued convincingly at oral argument before this court that, had he known of the possibility of bad faith sanctions under § 1927, he would have retained counsel to defend him at the October 1995 hearing, as he had during one previous encounter with § 1927. That he chose not to do so reflects his belief that the procedural defects of Lapidus's Rule 11 motion provided a complete defense to the threat of sanctions
 
 
 [8]
 At one point in the October 1995 hearing, the judge asked, "[i]s anybody interested in getting to the merits of this case?"