[880 NE2d 18, 849 NYS2d 497]

In the Matter of DEREK JOSEY, Appellant, v GLENN S. GOORD, as
Commissioner of Correctional Services, Respondent.

Argued November 15, 2007; decided December 20, 2007

## POINTS OF COUNSEL

*Prisoners' Legal Services of New York*, Albany (*Dianna Goodwin, Susan Johnson* and *Karen Murtagh-Monks* of counsel), for appellant. I. New York's transactional analysis approach to res judicata barred respondent from holding a third disciplinary hearing against appellant. (*Schuylkill Fuel Corp. v Nieberg Realty Corp.*, 250 NY 304; *Matter of Hernandez v Selsky*, 5 AD3d 882; *Matter of Burgess v Goord*, 285 AD2d 753; *O'Brien v City of Syracuse*, 54 NY2d 353; *Ryan v New York Tel. Co.*, 62 NY2d 494; *Marinelli Assoc. v Helmsley-Noyes Co.*, 265 AD2d 1; *Smith v Russell Sage Coll.*, 54 NY2d 185; *Matter of Reilly v Reid*, 45 NY2d 24; *Thomas v City of New York*, 239 AD2d 180; *Matter of Doherty v Cuomo*, 76 AD2d 14.) II. Appellant's criminal conviction does not fall within the newly discovered material evidence exception to the doctrine of res judicata. (*Matter of Hernandez v Selsky*, 5 AD3d 882; *Matter of Evans v Monaghan*, 306 NY 312; *Matter of Burgess v Goord*, 285 AD2d 753; *Gonzalez v Chalpin*, 233 AD2d 367; *Olwine, Connelly, Chase, O'Donnell & Weyher v Valsan, Inc.*, 226 AD2d 102; *Matter of Hartje v Coughlin*, 70 NY2d 866; *Matter of Doherty v Cuomo*, 76 AD2d 14; *People ex rel. Leonard HH. v Nixon*, 148 AD2d 75; *Porter v Coughlin*, 421 F3d 141; *Matter of Howard v Coughlin*, 212 AD2d 852.) III. Respondent should not be permitted to use the administrative Penal Law offense rule to overcome the well-established legal doctrine of res judicata. (*Matter of Campagna v Shaffer*, 73 NY2d 237; *Boreali v Axelrod*, 71 NY2d 1; *Matter of Encarnacion v Goord*, 286 AD2d 828; *Matter of Soto-Rodriguez v Goord*, 252 AD2d 782; *Matter of Caroselli v Goord*, 23 AD3d 712; *Matter of Garcia v Coombe*, 233 AD2d 328; *Matter of Griffen v Goord*, 277 AD2d 612; *Matter of Hart v Coombe*, 229 AD2d 754; *Matter of Reilly v Reid*, 45 NY2d 24.)

*Andrew M. Cuomo, Attorney General*, Albany (*Martin A. Hotvet, Barbara D. Underwood* and *Andrew D. Bing* of counsel), for respondent. Res judicata did not foreclose the prison disciplinary determination at issue here. (*Ryan v New York Tel. Co.*, 62 NY2d 494; *O'Brien v City of Syracuse*, 54 NY2d 353; *Matter of Evans v Monaghan*, 306 NY 312; *Matter of Hodes v Axelrod*, 70 NY2d 364; *Matter of Meegan S. v Donald T.*, 64 NY2d 751; *Matter of John P. v Whalen*, 54 NY2d 89; *People ex rel. Williams v Rodriguez*, 108 AD2d 1007; *People ex rel. Mosery v Superintendent of Nassau County Correctional Facility*, 8 AD3d

593; *People ex rel. McEneny v New York State Div. of Parole,* 268 AD2d 250; *People v Vasquez,* 89 NY2d 521.)

**OPINION OF THE COURT**

GRAFFEO, J.

Petitioner, an inmate in the custody of the New York State Department of Correctional Services (DOCS), brings this CPLR article 78 proceeding claiming that the doctrine of res judicata precludes the imposition of a prison disciplinary penalty based on his second-degree manslaughter conviction because he was previously disciplined in connection with the incident underlying his criminal conviction. Like the courts below, we conclude that res judicata does not apply under these circumstances.

On July 17, 2003, petitioner Derek Josey and another inmate, Richard Rodriguez, engaged in a physical altercation witnessed by over 300 other prisoners. During the fight, petitioner stabbed Rodriguez in the chest. He died later that day. Three days later, DOCS charged petitioner in a misbehavior report with breaching inmate rules prohibiting assault, fighting, possession of a weapon and refusal to obey a direct order.[1] The report stated that three correction officers observed "two combatants lunging back and forth at each other, with what appeared to be weapons in hand." Following the completion of a tier III disciplinary hearing on July 30, 2003, a hearing officer found petitioner guilty of the assault, fighting and weapon charges, and imposed a penalty of 24 months in the Special Housing Unit (SHU) with a corresponding loss of packages, commissary and telephone privileges. For reasons that are unexplained in the record, neither the misbehavior report nor the hearing officer's written determination indicated Rodriguez's death.

A second DOCS misbehavior report premised on the same incident was served on petitioner in September 2003, charging him with violating the disciplinary rules proscribing assault, possession of a weapon, refusal to obey a direct order and violent conduct. This report added that Rodriguez had died and that confidential informants stated that petitioner had stabbed Rodriguez with a metal shank, which was hidden with the help of other inmates. According to the report, State Police retrieved the weapon. After this tier III hearing, petitioner was found guilty of assault, possession of a weapon and violent conduct, and assessed a penalty of 120 months in the SHU with a loss of

---

1. No disciplinary rule specifically prohibits homicide.

privileges. On administrative review, the penalty was reduced to 60 months in the SHU. Petitioner brought an article 78 proceeding in Supreme Court to annul the determination, arguing that it was barred by res judicata. While that court proceeding was pending, DOCS reversed its determination, reasoning that the incident had already been considered at the July 2003 hearing. As a result, petitioner withdrew his article 78 petition.

In August 2004, petitioner appeared in Dutchess County Court and pleaded guilty to second-degree manslaughter (Penal Law § 125.15 [1]) in connection with the July 17, 2003 incident, and was sentenced as a second felony offender to a consecutive term of 6½ to 13 years.[2] DOCS later issued a third misbehavior report, charging petitioner with violating disciplinary rule 1.00 (7 NYCRR 270.2 [A]), which authorizes DOCS to discipline an inmate convicted of violating the Penal Law. Following a third tier III hearing, the hearing officer found petitioner guilty and imposed an additional 72 months in the SHU, together with a loss of privileges and 156 months loss of good time. The determination was affirmed on administrative appeal.

Petitioner commenced this article 78 proceeding, asserting that the doctrine of res judicata prohibited DOCS from holding the third tier III hearing. Supreme Court denied the petition and dismissed the proceeding, finding res judicata inapplicable. The Appellate Division affirmed and we granted petitioner leave to appeal.

Petitioner argues that the third tier III determination must be annulled on res judicata grounds because the Penal Law conviction, upon which the determination was based, arose out of the same July 17, 2003 incident for which he was already assessed a penalty following the first tier III determination. DOCS counters that application of res judicata under the circumstances of this case would be inconsistent with the purpose of prison disciplinary proceedings and unduly hamper its ability to regulate the security and safety of the prison environment.

The doctrine of res judicata precludes a party from litigating "a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter" (*Matter of Hunter*, 4 NY3d 260, 269 [2005]). Under New York's transactional approach to the rule, "once a claim is brought to a final conclusion, all other claims arising out of the

---

**2.** Petitioner was originally indicted for murder, but pleaded guilty to manslaughter in full satisfaction of the indictment.

same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy" (*O'Brien v City of Syracuse*, 54 NY2d 353, 357 [1981]). Additionally, res judicata is generally applicable to quasi-judicial administrative determinations that are "rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law" (*Ryan v New York Tel. Co.*, 62 NY2d 494, 499 [1984]).

Before we will apply res judicata to an administrative decision, however, "it is necessary to determine whether to do so would be consistent with the function of the administrative agency involved, the peculiar necessities of the particular case, and the nature of the precise power being exercised" (*Matter of Venes v Community School Bd. of Dist. 26*, 43 NY2d 520, 524 [1978] [internal quotation marks and citation omitted]). Consequently, the rule should give conclusive effect to agency determinations "only if such application is consistent with the nature of the particular administrative adjudication" (*id.*; *see also* Borchers and Markell, New York State Administrative Procedure and Practice § 3.23, at 76 [2d ed] [observing that "preclusion must make sense within the over-all context of the agency's procedures" (internal quotation marks and footnote omitted)]).

Here, DOCS promptly issued petitioner a misbehavior report after the fight and held a tier III hearing, ultimately finding petitioner guilty of violating a number of inmate rules and imposing a penalty. In this regard, DOCS urges that immediate disciplinary action is essential to maintain order in correctional facilities and discourage violent behavior by inmates. Since it was not until over a year later that petitioner pleaded guilty to second-degree manslaughter, DOCS contends that it must be able to conduct another tier III hearing pursuant to disciplinary rule 1.00, which permits the imposition of departmental sanctions based on a criminal conviction and specifically provides that it "does not preclude an inmate from being disciplined at any time for any violation of the following rules of conduct based upon the same incident" (7 NYCRR 270.2 [A] [note]). Although petitioner correctly asserts that both determinations arose out of the same July 17, 2003 transaction, we conclude that res judicata does not foreclose DOCS from disciplining petitioner for his subsequent criminal conviction. Application of the doctrine in this context would be inconsistent with the necessities of the case and the nature of DOCS's functions.

We have recognized that DOCS "has legitimate penological interests in seeing that disciplinary determinations are made quickly, both for security and rehabilitative reasons" (*People ex rel. Vega v Smith*, 66 NY2d 130, 142 [1985]). "Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances" (*Superintendent, Mass. Correctional Institution at Walpole v Hill*, 472 US 445, 456 [1985]). Furthermore, when an inmate is confined pending a disciplinary hearing, departmental regulations provide circumscribed time frames for the adjudicatory process (*see* 7 NYCRR 251-5.1). Generally, DOCS is directed to commence the hearing within seven days of confinement and complete it within 14 days following the issuance of a misbehavior report (*see* 7 NYCRR 251-5.1 [a], [b]).

DOCS therefore has both a need and general obligation to act swiftly to separate and discipline inmates who commit violent acts in prison, often before it can perform a comprehensive investigation. Indeed, prison disciplinary determinations need only be supported by substantial evidence (*see Matter of Lahey v Kelly*, 71 NY2d 135, 140 [1987]). In contrast, where a criminal investigation results in a subsequent conviction, issues such as mens rea and self-defense are necessarily resolved beyond a reasonable doubt, and this distinction is not obviated by an inmate who acknowledges his guilt by entering a plea, as was the case here.[3] In the prison setting, DOCS has a strong penological interest in having the ability not only to conduct a disciplinary proceeding and impose a penalty for the violation of disciplinary rules, but also to modify that penalty in light of a subsequent criminal conviction premised on the same act—as expressly contemplated by disciplinary rule 1.00. For example, where two inmates are promptly disciplined for fighting, but one is later criminally convicted of attempted murder for initiating the confrontation, DOCS should have the discretion to modify that inmate's penalty in the interest of prison security. As we have stated, the goal of prison disciplinary action is not "to vindicate public justice, but rather to further the separate and important

---

**3.** Additionally, a consecutive sentence is generally required for inmates who are convicted of committing a felony while incarcerated for a prior felony conviction, resulting in a lengthier prison term under DOCS's supervision (*see* Penal Law § 70.25 [2-a], [5]). But when DOCS disciplines an inmate before a conviction, DOCS is unable at that time to consider the effect of such increased incarceration on prison safety and security when rendering the penalty.

public interest in maintaining prison order and safety" (*People v Vasquez*, 89 NY2d 521, 529 [1997], *cert denied sub nom. Cordero v Lalor*, 522 US 846 [1997] [internal quotation marks omitted]).

We therefore determine that res judicata does not preclude DOCS from disciplining an inmate for being convicted of a Penal Law offense even though DOCS previously assessed a penalty for the inmate's violation of disciplinary rules stemming from the same conduct. To conclude otherwise would impede DOCS's ability to promote prison safety and have the perverse effect of encouraging DOCS hearing officers to impose more stringent disciplinary penalties initially, before any criminal investigation and proceedings are concluded.

Accordingly, the order of the Appellate Division should be affirmed, without costs.

Chief Judge KAYE and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

Order affirmed, without costs.