In the Matter of MEADOWSWEET DAIRY, LLC, et al., Appellants, v PATRICK HOOKER, as Commissioner of Agriculture and Markets, et al., Respondents. [898 NYS2d 276]—

McCarthy, J. Appeal from a judgment of the Supreme Court (Egan, Jr., J.), entered November 20, 2008 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to, among other things, review a determination of respondent Commissioner of Agriculture and Markets finding that petitioners' activity in producing raw milk and raw milk products was subject to regulation by respondents.

Petitioners Steven Smith and Barbara Smith own and operate a farm. From 1995 until 2007, they sold milk to dairy processors, made dairy products and sold raw milk—milk which is unpasteurized—at their farm. Throughout that time, they possessed all of the permits required of them and were regulated and inspected by the Department of Agriculture and Markets. In March 2007, the Smiths surrendered their permits and formed petitioner Meadowsweet Dairy, LLC. Meadowsweet's only assets are the dairy cows on the Smiths' farm and some milk bottles. As operating managers of Meadowsweet, the Smiths tend the herd and produce dairy products such as raw milk yogurt, raw milk butter and raw milk cheese. All of the dairy products produced by the Smiths from Meadowsweet's cows, including the milk itself, are unpasteurized.

Individuals become members in Meadowsweet by paying a $50 membership fee, which Meadowsweet deems their "capital contribution" to the company. Members make quarterly contributions for the maintenance of the herd based upon the individual member's estimated consumption of dairy products

during that quarter, and are thereby entitled to "dividends" that are distributed in the form of an amount of raw milk products in proportion to the member's contributions. Products produced by the Smiths from Meadowsweet's cows are only available to Meadowsweet's members.

Following an inspection in October 2007, the Department seized approximately 260 pounds of raw milk products from the Smiths' farm. The Department then gave petitioners notice that a hearing would be held to show cause why the products should not be destroyed as adulterated (see Agriculture and Markets Law §§ 199-a, 200 [3], [4]; § 202-b). Petitioners did not appear at the hearing. Respondent Commissioner of Agriculture and Markets issued a final determination adopting a Hearing Officer's recommendation that the seized products be destroyed. Petitioners did not seek judicial review of that determination (see Agriculture and Markets Law § 202-b).

Petitioners commenced a declaratory judgment action against the Commissioner and respondent William Francis, as the Department's Director of the Division of Milk Control and Dairy Services, seeking a declaration that respondents lacked jurisdiction to regulate them.[1] Upon respondents' motion, Supreme Court (Bender, J.) converted the action into a special proceeding and transferred venue. Respondents then moved to dismiss the matter as barred under the doctrine of res judicata or, alternatively, to grant them summary judgment. Supreme Court (Egan, Jr., J.) concluded that the Department had jurisdiction over petitioners pursuant to Agriculture and Markets Law §§ 20 and 199-a. The court then dismissed the application on its merits, finding that Meadowsweet produces "raw milk" under a liberal interpretation of that term (see 1 NYCRR 2.2 [pp]), petitioners were required to obtain a raw milk permit because they made raw milk available to "consumers" under the ordinary meaning of that term (see 1 NYCRR 2.3 [b]), and petitioners operated a "milk plant," which required them to obtain a milk plant permit (see 1 NYCRR 2.2 [bb]; 2.3 [a]). The court further found that the petition should be dismissed based on res judicata, as petitioners had a full and fair opportunity to litigate the Department's jurisdiction over them at the October 2007 hearing. Petitioners appeal.

---

1. That same day, the Department commenced an administrative enforcement action seeking an order that would, among other things, prohibit petitioners from producing raw milk products and offering them to Meadowsweet's members without first obtaining a milk plant permit and raw milk permit. A hearing was held on that matter in January 2008, resulting in a July 2008 order in the Department's favor. Petitioners did not properly challenge that determination pursuant to CPLR article 78.

Initially, this proceeding is not barred by the doctrine of res judicata. Although res judicata generally applies to quasi-judicial administrative determinations that are reached pursuant to the agency's adjudicative authority and after a hearing " 'employing procedures substantially similar to those used in a court of law' " (*Matter of Josey v Goord*, 9 NY3d 386, 390 [2007], quoting *Ryan v New York Tel. Co.*, 62 NY2d 494, 499 [1984]), where a court's or an agency's determination as to subject matter jurisdiction is a mere legal conclusion, as opposed to a conclusion reached after a factual determination, "the want of jurisdiction to render the particular judgment may always be asserted and raised directly or collaterally" (*Friedman v State of New York*, 24 NY2d 528, 536 [1969]). Since the Department's exercise of jurisdiction over petitioners at the October 2007 hearing represented a mere legal conclusion of subject matter jurisdiction, petitioners may now challenge the Department's jurisdiction over them through this collateral attack.

That challenge has no merit, however, because the Department has jurisdiction over petitioners. The Agriculture and Markets Law grants broad authority to the Commissioner over, among other things, farms used in the "production, manufacture, storage, sale or transportation within the state of any dairy products or any imitation thereof" (Agriculture and Markets Law § 20; *see* Agriculture and Markets Law § 254; *Matter of Tuscan Dairy Farms v Barber*, 45 NY2d 215, 223 [1978], *appeal dismissed* 439 US 1040 [1978]), as well as any person or corporation that manufactures, produces or possesses any adulterated or misbranded article of food (*see* Agriculture and Markets Law § 199-a). While Meadowsweet contends that it does not sell milk products to its members—a contention that we do not necessarily accept—the Department's authority is not limited to items offered for sale, but includes articles of food given to another person (*see* Agriculture and Markets Law § 199 [1]). Meadowsweet must sell or give its dairy products to its members because they only have a property interest in shares of the limited liability company (hereinafter LLC); they do not have an ownership interest in specific property of the LLC, namely the milk or milk products themselves (*see* Limited Liability Company Law § 601; *Yonaty v Glauber*, 40 AD3d 1193, 1195 [2007]).[2] The Department acted within its jurisdiction when it investigated Meadowsweet for producing, manufactur-

---

2. Even if we accepted Meadowsweet's contention that its members receive milk products as dividends or returns on their investment in the LLC, they are given those products just like investors in other companies are given cash dividends.

ing, selling or giving away dairy products that were adulterated or misbranded, and may continue to exercise its authority in this manner (*see* Agriculture and Markets Law § 200 [3], [4]; § 201 [7], [8]).

Petitioners' activities required them to obtain a milk plant permit. Anyone operating a milk plant must obtain a permit from the Department (*see* 1 NYCRR 2.3 [a]). A milk plant is defined as "any place, premises or establishment engaged solely or predominately in the receipt of prepasteurized milk, commingled milk or milk products which is or are subsequently processed or manufactured into milk . . . [or] milk products" (1 NYCRR 2.2 [bb]). The regulatory definition of milk includes only pasteurized milk (*see* 1 NYCRR 2.2 [y]). Prepasteurized milk is defined as milk "which is to be pasteurized prior to being processed into milk" or a milk product (1 NYCRR 2.2 [mm]). As petitioners do not intend to ever pasteurize their products, the unpasteurized milk that they get from their cows does not qualify as prepasteurized milk, nor are they planning to process it into milk under the regulatory definitions. On the other hand, the broad definition of milk product includes any food "which is commonly and usually characterized as a milk product" (1 NYCRR 2.2 [cc] [2]). Petitioners' unpasteurized milk would commonly be characterized as a milk product, as would the unpasteurized dairy products that they produce from that unpasteurized milk.[3] Because petitioners operate an establishment that predominately receives a milk product (unpasteurized milk from Meadowsweet's cows) that is subsequently processed or manufactured into milk products (what petitioners characterize as raw milk butter, raw milk cheese and raw milk yogurt, among other things), they are operating a milk plant and must obtain a milk plant permit (*see* 1 NYCRR 2.2 [bb]; 2.3 [a]).

Petitioners' activities also required them to obtain a raw milk permit. A raw milk permit is required of anyone "who sells, offers for sale or otherwise makes available raw milk for consumption by consumers" (1 NYCRR 2.3 [b] [1]). Raw milk is defined as "the lacteal secretion, practically free from colostrum, obtained by the complete milking of one or more healthy cows, goats or sheep which will not be pasteurized prior to being sold

---

**3.** Although petitioners may contend that the word "prepasteurized" in the definition of milk plant applies not only to the word milk that immediately follows it, but to commingled milk and milk products as well, that extension of the adjective would be redundant and inconsistent with common interpretation because the definition of commingled milk includes only prepasteurized milk (*see* 1 NYCRR 2.2 [e]).

or offered for sale to consumers" (1 NYCRR 2.2 [pp]). Thus, to qualify as raw milk, the substance must not only be unpasteurized, but must also be "sold or offered for sale to consumers" (1 NYCRR 2.2 [pp]). The regulations do not define sold, sale or consumer. Meadowsweet's members fall within ordinary dictionary definitions of consumers, as they are people who consume something or people who use a commodity (i.e., the milk products) (see Random House Webster's Unabridged Dictionary 437 [2d ed 1998]; Consumers, http://dictionary.reference.com/browse/consumers [Dictionary.com, accessed Feb. 5, 2010]). Meadowsweet contends that no sale occurs when its members receive milk products as dividends. The financial arrangements of the LLC appear, however, to have been purposely designed to avoid cash sales of dairy products in an attempt to circumvent the Department's regulations. According to Meadowsweet's own brochure, members pay quarterly contributions to the LLC in an amount that reflects the member's "[e]stimated consumption of dairy products" during the quarter.[4] The brochure then lists a price per unit for different types of dairy products for members to calculate their contribution. When a member receives dairy products from the LLC, the dollar amount from that list is written down and subtracted from the member's quarterly contributions. Rather than truly constituting dividends in return for their investment in the LLC, this arrangement appears to be a system of prepayment for the sale of dairy products. Thus, as the substance from Meadowsweet's cows is sold to consumers without being pasteurized, it falls within the definition of raw milk (see 1 NYCRR 2.2 [pp]). Even if it was not sold, a permit is required if raw milk is otherwise made available to consumers, and Meadowsweet admits that its raw milk products are made available to its members. Considering the common sense meaning of undefined terms along with the regulatory definitions, petitioners were making raw milk available and were thus required to obtain a raw milk permit (see 1 NYCRR 2.3 [b] [1]).

Mercure, J.P., Spain, Rose and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, without costs.

---

4. We note that Meadowsweet's use of the word "consumption" in its own brochure contradicts its argument that its members are not consumers of its raw milk products.